IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| STATE OF TEXAS, *et al.*,<br><br>*Petitioners*,<br><br>v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>*Respondents*. | No. 22-1031<br>(consolidated with Nos. 22-1032, 22-1033, 22-1034, 22-1035, 2-1036, 22-1038) |

**MOTION OF THE ALLIANCE FOR AUTOMOTIVE INNOVATION
TO INTERVENE IN SUPPORT OF RESPONDENTS**

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27 and Circuit Rules 15(b) and 27, the Alliance for Automotive Innovation ("Auto Innovators")[1] respectfully moves for leave to intervene in the above-captioned consolidated

---

[1] Formed in 2020, the Alliance for Automotive Innovation is the singular, authoritative, and respected voice of the automotive industry. Focused on creating a safe and transformative path for sustainable industry growth, the Alliance for Automotive Innovation represents the manufacturers producing nearly 98 percent of cars and light trucks sold in the U.S. The organization is involved in regulatory and policy matters impacting the light-duty vehicle market across the country. Members include U.S. operations of international motor vehicle manufacturers, original equipment suppliers, technology, and other automotive-related companies and trade associations. The Alliance for Automotive Innovation is headquartered in Washington, DC, with offices in Detroit, MI, and Sacramento, CA. For more information see http://www.autosinnovate.org.

1

proceedings. This motion is timely because it is being filed within 30 days of the filing of petitions for review. Fed. R. App. P. 15(d).

I. INTRODUCTION

The seven petitions for review in these proceedings seek invalidation of a rule published by the U.S. Environmental Protection Agency ("EPA") on December 30, 2021, that sets motor vehicle greenhouse gas emissions ("GHG") standards for cars, light trucks and other vehicles sold in model years 2023 to 2026 (hereinafter "the GHG Rule").[2] The emissions standards in the GHG Rule become more stringent in each model year. By the 2026 model year, the GHG Rule is expected to have produced an improvement in fleet-wide GHG emissions of more than 28 percent from vehicular GHG emissions in model year 2022. As EPA stated when it announced the GHG Rule in December 2021, the Rule sets "the most ambitious

---

[2] *Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions Standards*, 86 Fed. Reg. 74,434 (Dec. 30, 2021). The GHG Rule revises GHG standards for several of the same model years that had been promulgated by the prior Administration in April 2020, most of which were themselves revisions of GHG regulations adopted in 2012. *See* 85 Fed. Reg. 24,174 (Apr. 30, 2020); 77 Fed. Reg. 62,624 (Oct. 15, 2012). The prior GHG standards were the product of joint rulemakings with the National Highway Traffic Safety Administration ("NHTSA"), in which NHTSA set corporate average fuel economy ("CAFE") standards. Proceedings on petitions for review of the April 2020 joint EPA-NHTSA rule in this Court have been held in abeyance since April 2021, pending completion of NHTSA's reconsideration of the CAFE standards in the April 2020 joint rule. Per Curiam Order, *Competitive Enter. Inst. v. NHTSA*, No. 20-1145 (Apr. 2, 2021).

vehicle emissions standards for greenhouse gas emissions ever established for the light-duty vehicle sector in the United States."[3]

The members of Auto Innovators are directly regulated by the GHG Rule.[4] Auto Innovators and its members support maintaining the GHG Rule in its current form, and the association moves to intervene to oppose vacatur of the GHG Rule. Auto Innovators believes that the GHG Rule falls within the scope of EPA's statutory authority. To be sure, the GHG Rule will challenge the industry, but EPA designed the Rule to balance overall stringency with critically important flexibilities that allow manufacturers to use a range of approaches to reduce air pollution while also adopting new technologies including electric vehicle technology. Thus, in addition to its support for maintaining the GHG Rule in its current form, Auto Innovators seeks to intervene to ensure that those critical regulatory provisions supporting electric vehicle technology are maintained.

---

[3] EPA, *EPA Finalizes Greenhouse Gas Standards for Passenger Vehicles, Paving Way for a Zero-Emissions Future* (Dec. 20, 2021), https://bit.ly/3wJFsTD (hereinafter "EPA GHG Rule Announcement.").

[4] In 2020, after EPA relaxed federal greenhouse gas emissions standards for Model Years 2021 through 2026, five members of the Auto Innovators (American Honda Motor Co., Inc., BMW of North America, Ford Motor Company, Volkswagen Group of America, and Volvo Car USA, LLC) entered into agreements with California to abide by greenhouse gas emissions standards that were more stringent than EPA's standards for those model years promulgated by the prior Administration. These are known as the California Framework Agreements. These five automakers remain bound by these agreements.

3

Reducing GHG emissions from all sectors of the U.S. economy is a national priority. The members of Auto Innovators are committed to doing their part. They have invested billions of dollars to develop and commercialize the technologies needed to meet increasingly stringent GHG standards.

The key to reducing GHG emissions will be a collective effort by the auto industry, federal and state governments, and the energy industry to shift the nation away from its current reliance on fossil-fueled, internal-combustion engine technology, and toward alternative energy sources, including the electrification of nation's fleet of cars and other vehicles. Auto Innovators seeks to participate in these proceedings because that transition must be supported by regulatory stability. If the outcome of the litigation remains in question for a significant period, or if the GHG Rule changes meaningfully, the members of the Auto Innovators could face stranded investments and planning uncertainty.

A.    **The Auto Industry's Shift to Electrification**

For decades, automakers have deployed increasingly advanced technologies to improve the fuel economy (and thus to reduce GHG emissions) of vehicles powered by internal combustion engines ("ICEs"). But most of the technologies to reduce fuel consumption from conventional ICE are now nearing the limits of their

capability. Unlike conventional ICE vehicles, electric vehicles ("EVs")[5] are propelled primarily by battery-powered traction motors and are inherently more energy-efficient. This Administration's stated goal is for EVs to account for up to 50 percent of new vehicle sales by the end of this decade. Doing so will require broad market success for these vehicles.

EPA, Auto Innovators, and the members of Auto Innovators have a common understanding of the importance of EVs to the reduction of GHG emissions from the light duty fleet well into the future. As EPA Administrator Regan stated when signing the GHG Rule, the new standards are "a giant step forward" in "paving the way toward an all-electric, zero-emissions transportation future."[6] The members of Auto Innovators have announced investments of over $80 billion in the U.S. for vehicle electrification by 2030. Widespread adoption of vehicle electrification is necessary to achieve the Administration's EV sales goal, and complementary measures and action from all stakeholders — including from federal and state governments and regulatory agencies — will be needed to help build a strong EV market. Those complementary measures include expanded EV charging, hydrogen fueling infrastructure for EVs that use fuel cells, consumer incentives to help spur

---

[5] EVs include battery electric vehicles ("BEVs"), plug-in hybrid electric vehicles ("PHEVs") and fuel cell electric vehicles ("FCEVs").

[6] EPA GHG Rule Announcement, *supra* note 3.

demand for these vehicles across all segments and price points, incentives for advanced manufacturing and research & development, and securing the supply chain necessary for battery manufacturing.

### B. The GHG Rule's Provisions for Electric Vehicles

Electric vehicles play an important role in the GHG Rule; indeed, the standards in the GHG Rule cannot be achieved without a dramatic increase in the use of alternative energy sources, including sales of EVs in the United States. Given the challenges of building the EV market, and consistent with the long-term goals of reducing air pollution, EPA has included in the GHG Rule provisions to increase the production and sale of EVs as quickly as possible. A vehicle manufacturer's compliance with the GHG Rule in a given model year depends in part on the sales-weighted average GHG emissions of the entire fleet of new vehicles that it produces and sells in the model year.[7] And, from the beginning of EPA's GHG vehicle emissions control program a decade ago, EPA has recognized the value of EV technologies by assigning a limited level of additional credit towards the annual fleet average GHG level.

---

[7] For almost 30 years, well before the start of EPA regulation of vehicular GHG emissions, the Agency has used that fleet-average approach when imposing vehicle emission standards. This provides each manufacturer flexibility in deciding how it can best reduce emissions from its unique mix of different vehicle models.

The GHG Rule maintains some credit provisions for some types of EVs in EPA's earlier GHG regulations. In addition to making the GHG standards in the final GHG Rule in December 2021 more stringent than what had been proposed, the final GHG Rule includes flexibility and credit provisions that are narrower than EPA had proposed. But the flexibilities and credit provisions that the GHG Rule preserves are integral to success of the Rule. Without them, vehicle manufacturers cannot meet the standards.

It is therefore of great concern to Auto Innovators that, in addition to seeking invalidation of the GHG Rule as a whole, several of the petitions for review take direct aim at the fleet averaging and credit provisions for EVs in the GHG Rule. For example, one petition asserts that "EPA's final rule attempts to establish stringent fleet-wide automobile emission standards with credit trading and enhanced credits for electric vehicles, but the agency lacks the legal authority to issue such a rule."[8] Another petition states that the GHG Rule "implicat[es] serious separation of powers concerns" because it "arrogat[es] to EPA the authority to effectively mandate the production and sale of electric cars rather than cars powered by internal combustion

---

[8] Petition 1, *Competitive Enterprise Inst. v. EPA*, No. 22-1032 (D.C. Cir. Feb. 28, 2022).

engines" and conflicts with the Clean Air Act.[9] A third petition states that the GHG Rule "exceeds EPA's authority by favoring one technology, electric vehicles, over others, including the comparably-clean renewable fuels produced by Petitioners."[10] These proceedings therefore implicate the substantial interest of Auto Innovators in preserving the GHG Rule, including the EV provisions which are important for each automaker's strategy for complying with the GHG reduction targets set by the GHG Rule.

## II.  GROUNDS FOR INTERVENTION

In addition to explaining its interests in the proceedings, a proposed intervenor must state concisely its grounds for intervention, *see* Federal Rule of Appellate Procedure 15(d), and under Circuit precedent must also establish standing to intervene. *Ala. Mun. Distribs. Grp. v. FERC*, 300 F.3d 877, 879 n.2 (D.C. Cir. 2002). While "Rule 15(d) simply requires the intervenor to file a motion setting forth its interest and the grounds on which intervention is sought," *Synovus Fin. Corp. v. Bd. of Governors of Fed. Rsrv. Sys.*, 952 F.2d 426, 433 (D.C. Cir. 1991), evaluation of an intervention motion under Rule 15(d) can be informed by reference to the criteria

---

[9] Petition 3, *Clean Fuels Dev. Coalition v. EPA*, No. 22-1036 (D.C. Cir. Feb. 28, 2022).

[10] Petition 2, *State Soybean Ass'n of Ill. v. EPA*, No. 22-1033 (D.C. Cir. Feb. 28, 2022).

for intervention in actions in the federal district courts under Federal Rule of Civil Procedure 24. *See Sierra Club, Inc. v. EPA*, 358 F.3d 516, 517-18 (7th Cir. 2004). Auto Innovators has standing sufficient for intervention and meets this Court's requirements for Rule 15(d) intervention as well as those that apply under Civil Rule 24.

### A.   Auto Innovators Has Standing to Intervene.

Auto Innovators has standing to intervene on behalf of its members because "(a) its members would otherwise have standing to [intervene] in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the [position] asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see also Air All. Houston v. EPA*, 906 F.3d 1049, 1058 (D.C. Cir. 2018); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).[11]

Standing under Article III requires (1) injury-in-fact, (2) causation, and (3) redressability. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). An asserted injury qualifies as a legally cognizable "injury in fact" if it is "an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual

---

[11] Standing is a requirement for Rule 15(d) intervention in this Circuit for a party seeking to intervene on the side of federal respondents. *See, e.g.*, *Crossroads Grassroots Pol'y Strategies v. FEC*, 788 F.3d 312, 317-18 (D.C. Cir. 2015); *Ala. Mun. Distribs. Grp. v. FERC*, 300 F.3d 877, 879 n.2 (D.C. Cir. 2002).

or imminent, not conjectural or hypothetical." *Id.* at 560 (citations omitted). Those requirements are easily met here. Because the GHG Rule directly regulates the vehicle manufacturers who are members of Auto Innovators, their standing is "self-evident." *Fund For Animals, Inc. v. Norton*, 322 F.3d 728, 733-734 (D.C. Cir. 2003); *see Lujan*, 504 U.S. at 561 ("there is ordinarily little question" that a person has standing where he "is himself an object of" challenged regulation). Moreover, auto manufacturers benefit from the stability and certainty these regulations provide. Stability and certainty facilitates investment, research, development, product planning, profitability, and the steady reduction of greenhouse gas emissions from the transportation sector. Auto Innovators members would be directly affected by any decision to grant the petition for review. *See Crossroads*, 788 F.3d at 317 (injury-in-fact exists "where a party benefits from agency action, the action is then challenged in court, and an unfavorable decision would remove the party's benefit"); *Military Toxics Project v. EPA*, 146 F.3d 948 (D.C. Cir. 1998) (same).[12]

The other requirements for organizational standing are also met here. Auto Innovators' mission includes representing its members' interests in litigation

---

[12] *Accord Yakima Valley Cablevision, Inc. v. FCC*, 794 F.2d 737, 744-45 (D.C. Cir. 1986) (finding intervention under Rule 15(d) warranted for parties who are "directly affected" by the action under review); *see also, e.g.*, *Sierra Club, Inc. v. EPA*, 358 F.3d 516, 518 (7th Cir. 2004) ("Persons whose legal interests are at stake are appropriate intervenors ….").

concerning regulations that directly apply to its members. *See Nat'l Lime Ass'n v. EPA*, 233 F.3d 625, 636 (D.C. Cir. 2000) (describing the "requirement of germaneness [as] undemanding; mere pertinence between litigation subject and organizational purpose is sufficient"). This Court has regularly permitted Auto Innovators and its predecessors to intervene in similar proceedings that challenge EPA emissions standards without the participation of their members. *See, e.g.,* Per Curiam Order, *Competitive Enter. Inst. v. NHTSA*, No. 20-1145 (D.C. Cir. Oct. 19, 2020) (granting intervention of Auto Innovators in challenge to joint EPA GHG and NHTSA fuel economy rulemaking); *California v. EPA,* 940 F.3d 1342 (D.C. Cir. 2019) (intervention by the Auto Alliance and Global Automakers in challenge to EPA's decision to reconsider previously adopted GHG standards for MYs 2022-2025).

> **B.  The Criteria for Intervention as of Right Under Civil Rule 24(a) Support Allowing Auto Innovators To Intervene.**

Federal Rule of Civil Procedure 24(a) provides in relevant part that

> On timely motion, the court must permit anyone to intervene who … claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). A movant has an absolute right to intervene under Rule 24(a)(2) if it satisfies four requirements: (1) the motion is timely; (2) the applicant

demonstrates a "'legally protected interest in the action'"; (3) the action "'threaten[s] to impair'" that legally protected interest; and (4) no party to the action will adequately represent the applicant's interests. *Karsner v. Lothian*, 532 F.3d 876, 885 (D.C. Cir. 2008) (quoting *SEC v. Prudential Secs. Inc.*, 136 F.3d 153, 156 (D.C. Cir. 1998)).

As noted above (*see supra* at 2), the first of those requirements is met. This motion for leave to intervene will be filed within 30 days of the filing of the petitions for review, and is therefore timely. Fed. R. App. P. 15(d).

As to the second requirement, again, because the Auto Innovators' members are the object of the rule at issue, their interest in this litigation is self-evident. Moreover, their standing under Article III (*see supra* pp. 9-11) "is alone sufficient to establish that [it] has 'an interest relating to the property or transaction which is the subject of the action'" under Rule 24(a)(2). *Fund For Animals*, 322 F.3d at 735; *accord Jones v. Prince George's Cnty.*, 348 F.3d 1014, 1018-19 (D.C. Cir. 2003); *see also Am. Horse Prot. Ass'n, Inc. v. Veneman*, 200 F.R.D. 153, 157 (D.D.C. 2001) ("[I]t is impossible to conjure a case in which an intervenor would have constitutional standing to intervene but not have a sufficient 'interest in the litigation' to justify intervention under Fed. R. Civ. P. 24(a)(2).").

As to the third requirement, "[i]n determining whether a movant's interests will be impaired by an action, [the] courts in this circuit look to the 'practical

12

consequences' to [the] movant of denying intervention." *Am. Horse Prot. Ass'n,* 200 F.R.D. at 158. The GHG Rule is infeasible of compliance unless each of its components including its EV components remains intact. That is sufficient practical impairment to Auto Innovators' ability to protect its members' interests to satisfy the impairment prong of the Rule 24(a)(2) intervention test.

As to the fourth requirement, the existing parties cannot adequately represent Auto Innovators' interests. Under the familiar test set long ago by the Supreme Court, a proposed intervenor is only required to show that representation of its interests "'may be' inadequate," and "the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Auto Innovators easily clears that bar. The respondents are federal agencies and officers. Courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors" because an agency's obligation "is to represent the interests of the American people" writ large, not the more particular interests of a company or organization. *Fund for Animals*, 322 F.3d at 736; *Dimond v. District of Columbia*, 792 F.2d 179, 192-93 (D.C. Cir. 1986). As the advocate for all full-line manufacturers selling vehicles in the United States, Auto Innovators can articulate the impact that the petitioners' challenge, if successful, would have on the auto industry in a manner that the government cannot. *See Nat. Res. Def. Council v. Costle*, 561 F.2d 904, 912 (D.C. Cir. 1977) (finding association's

13

interests more "focus[]ed" than the government interest). That is sufficient to find that the government will not adequately represent the industry's interests.

### C. The Criteria for Permissive Intervention Under Civil Rule 24(b) Likewise Support Permitting Auto Innovators To Intervene.

Civil Rule 24(b) provides that "[o]n timely motion, the court may permit anyone to intervene who ... has a claim or defense that shares with the main action a common question of law or fact."). This is not a restrictive standard: "Rule 24(b) ... provides basically that anyone may be permitted to intervene if his claim and the main action have a common question of law or fact," *Nuesse v. Camp*, 385 F.2d 694, 704 (D.C. Cir. 1967), so long as intervention would not "unduly delay or prejudice the rights of the original parties." *Acree v. Republic of Iraq*, 370 F.3d 41, 49 (D.C. Cir. 2004), *abrogated on other grounds by Republic of Iraq v. Beaty*, 556 U.S. 848 (2009). This Court has read that rule broadly, and "eschewed strict readings of the phrase 'claim or defense.'" *EEOC v. Nat'l Child.'s Ctr., Inc.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).

For the same reasons given above with respect to intervention as of right under Civil Rule 24(a)(2), Auto Innovators readily meets the less burdensome requirements for permissive intervention under Civil Rule 24(b). Auto Innovators has Article III standing; its intervention here is timely; and granting a motion by Auto Innovators under Rule 24(b) would not prejudice the rights of the original parties or cause delay. Auto Innovators seeks to participate in this proceeding to

14

address the same legal issue raised by the petition, which include, *inter alia*, whether the EV provisions in the GHG Rule are lawful and supported by the record. As such, the criteria for permissive intervention under Civil Rule 24(b) likewise support Auto Innovators' motion to intervene.

## III. CONCLUSION

For the foregoing reasons, Auto Innovators respectfully requests that the Court grant its motion for leave to intervene.

                                      Respectfully submitted,

                                      <u>s/John C. O'Quinn</u>
                                      John C. O'Quinn, P.C.
                                      Stuart Drake
                                      Mariel A. Brookins
                                      Kirkland & Ellis LLP
                                      1301 Pennsylvania Avenue, NW
                                      Washington, DC 20004
                                      (202) 389-5000

                                      Charles H. Haake
                                      Catherine M. W. Palin
                                      Alliance for Automotive Innovation
                                      1050 K Street, N.W.  Suite 650
                                      Washington, D.C.  20001
                                       (202)-326-5500

Dated: March 30, 2022

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rules 15(c)(6) and 26.1, the Alliance for Automotive Innovation certifies that it is a not for-profit trade association of motor vehicle manufacturers, original equipment suppliers, and technology and other automotive-related companies.  The Alliance for Automotive Innovation operates for the purpose of promoting the general commercial, professional, legislative, and other common interests of its members.  The Alliance for Automotive Innovation does not have any outstanding shares or debt securities in the hands of the public, nor does it have a parent company.  No publicly held company has a 10% or greater ownership interest in the Alliance for Automotive Innovation.

## CERTIFICATE AS TO PARTIES

Pursuant to D.C. Circuit Rules 27(a)(4) and 28(a)(1)(A), the Auto Alliance submits this certificate of persons who are currently parties, intervenors, or amici:

Petitioners in No. 22-1031: States of Texas, Alabama, Alaska, Arkansas, Indiana, Kentucky, Louisiana, Mississippi, Missouri, Montana, Nebraska, Ohio, Oklahoma, South Carolina, and Utah.

Petitioners in No. 22-1032: Competitive Enterprise Institute, Anthony Kreucher, Walter M. Kreucher, James Leedy, March Scribner, and the Domestic Energy Producers Alliance.

Petitioners in No. 22-1033: The State Soybean Associations of the States of Illinois, Iowa, Indiana, Michigan, Minnesota, North Dakota, Ohio, and South Dakota, and Diamond Alternative Energy, LLC.

Petitioner in No. 22-1034: American Fuel & Petrochemical Manufacturers.

Petitioner in No. 22-1035: State of Arizona.

Petitioners in No. 22-1036: Clean Fuels Development Coalition, ICM, Inc., Illinois Corn Growers Association, Indiana Corn Growers Association, Kansas Corn Growers Association, Kentucky Corn Growers Association, Michigan Corn Growers Association, Missouri Corn Growers Association, and Valero Renewable Fuels Company, LLC.

Petitioner in No. 22-1038: Energy Marketers of America.

Respondent in Nos. 22-1031, 22-1032, 22-1033, 22-1034, 22-1035, 22-1036, and 22-1038: Environmental Protection Agency.

Respondent in Nos. 22-1031, 22-1035: Michael S. Regan, Administrator of the Environmental Protection Agency.

Proposed Intervenors in Nos. 22-1031, 22-1032, 22-1033, 22-1034, 22-1035, 22-1036, and 22-1038: Alliance for Automotive Innovation, Conservation Law Foundation, Environmental Defense Fund, Environmental Law and

Policy Center, Natural Resources Defense Council, Public Citizen, Sierra Club, Union of Concerned Scientists, States of California, Colorado, Connecticut, Delaware, Hawaii, Illinois, Maine, Maryland, Michigan, Minnesota, Nevada, New Jersey, New Mexico, New York, North Carolina, Oregon, Rhode Island, Vermont, Washington, Wisconsin, the Commonwealths of Massachusetts, and Pennsylvania, District of Columbia, City and County of Denver, City and County of San Francisco, City of Los Angeles. City of New York.

Amici Curiae in Nos. 22-1031, 22-1032, 22-1033, 22-1034, 22-1035, 22-1036, and 22-1038: None.

# CERTIFICATE OF COMPLIANCE
# WITH TYPE-VOLUME LIMITATION

I hereby certify that:

1. This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because it contains 3,381 words, excluding the parts of the motion exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point font.

March 30, 2022

s/John C. O'Quinn
John C. O'Quinn, P.C.

# CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2022, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system. I certify that all participants in this case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

s/John C. O'Quinn
John C. O'Quinn, P.C.
