No. 22-1031 and consolidated cases

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

STATE OF TEXAS, et al.,

*Petitioners*,

v.

ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents.*

On Petition for Review of a Rule of the
Environmental Protection Agency

## SUPPLEMENTAL BRIEF FOR RESPONDENT-INTERVENOR PUBLIC INTEREST ORGANIZATIONS

Sean H. Donahue
Donahue, Goldberg & Herzog
1008 Pennsylvania Avenue, SE
Washington, DC 20003
(202) 277-7085
sean@donahuegoldberg.com

*Attorney for Respondent-Intervenor*
  *Environmental Defense Fund*

Ian Fein
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-6147
ifein@nrdc.org

*Attorney for Respondent-Intervenor*
  *Natural Resources Defense Council*

*Additional counsel listed in signature block*

# TABLE OF CONTENTS

TABLE OF CONTENTS...............................................................................i

TABLE OF AUTHORITIES ....................................................................ii

GLOSSARY...........................................................................................v

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................1

ARGUMENT ..........................................................................................2

I.  *Ohio* Should Not Change the Standing Analysis Here....................2

II. *Loper Bright*, If Applicable, Supports EPA's Position
    Here...............................................................................................3

    A.    *Loper Bright* Does Not Excuse Petitioners' Failure
    to Raise Their Statutory Authority Arguments at
    an Appropriate Time .............................................................4

    B.    EPA's Interpretation Is the Best Reading of the
    Statute, and Should Be Upheld Under *Loper Bright* ...........6

CONCLUSION.....................................................................................12

CERTIFICATE OF COMPLIANCE .......................................................15

# TABLE OF AUTHORITIES

**Cases**

*Alaska Dep't of Env't Conservation v. EPA*,
  540 U.S. 461 (2004)....................................................................11

*Appalachian Power Co. v. EPA*,
  135 F.3d 791 (D.C. Cir. 1998).......................................................5

*Chevron v. NRDC*,
  467 U.S. 837 (1984)......................................................................4

*Coal. for Resp. Regul., Inc. v. EPA*, 684 F.3d 102 (D.C. Cir. 2012),
  *cert. denied in relevant part*, 571 U.S. 951 (2013) ........................9

*Davies Warehouse Co. v. Bowles*,
  321 U.S. 144 (1944)....................................................................11

*Fed. Express Corp. v. Holowecki*,
  552 U.S. 389 (2008)....................................................................11

*Growth Energy v. EPA*,
  5 F.4th 1 (D.C. Cir. 2021)..............................................................4

*Int'l Harvester Co. v. Ruckelshaus*,
  478 F.2d 615 (D.C. Cir. 1973)........................................................9

*Kentucky v. EPA*,
  No. 24-1087 (D.C. Cir. July 17, 2024)............................................6

*\*Loper Bright Enterprises v. Raimondo*,
  144 S.Ct. 2244 (2024)...................................... 1, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12

*Massachusetts v. EPA*,
  549 U.S. 497 (2007)....................................................................10

*Michigan v. EPA*,
  576 U.S. 743 (2015)....................................................................10

---

\* Authorities on which Respondent-Intervenor Public Interest Organizations chiefly rely are marked with asterisks.

*Motor & Equip. Mfrs. Ass'n v. Nichols*,
142 F.3d 449 (D.C. Cir. 1998)........................................................5

*NLRB v. Noel Canning*,
573 U.S. 513 (2014)........................................................10

*NRDC v. EPA*,
655 F.2d 318 (D.C. Cir. 1981)........................................................8

*NRDC v. Thomas*,
805 F.2d 410 (D.C. Cir. 1986)........................................ 5, 10

*Ohio v. EPA*,
144 S.Ct. 2040 (2024)........................................................5

*Ohio v. EPA*,
98 F.4th 288 (D.C. Cir. 2024)........................................ 1, 2, 3

*Orton Motor, Inc. v. HHS*,
884 F.3d 1205 (D.C. Cir. 2018)........................................................11

*Skidmore v. Swift & Co.*,
323 U.S. 134 (1944)........................................ 5, 7, 10, 12

*Wayman v. Southard*,
10 Wheat. 1 (1825)........................................................10

**Statutes**

42 U.S.C. § 7401(c) ........................................................8

*42 U.S.C. § 7521(a) ........................................ 7, 8, 9, 10

42 U.S.C. § 7521(b) ........................................................8

42 U.S.C. § 7607(b)(1)........................................................4

*42 U.S.C. § 7607(d)(7)(B) ........................................ 5, 12

42 U.S.C. § 7607(d)(9)(A)........................................................6

**Federal Register**

54 Fed. Reg. 22,652 (May 25, 1989)........................................................11

62 Fed. Reg. 31,192 (June 6, 1997) .................................................................11

65 Fed. Reg. 6698 (Feb. 10, 2000) ..................................................................11

75 Fed. Reg. 25,324 (May 7, 2010) .................................................................11

77 Fed. Reg. 62,624 (Oct. 15, 2012).................................................................11

79 Fed. Reg. 23,414 (Apr. 28, 2014) ...............................................................11

85 Fed. Reg. 24,174 (Apr. 30, 2020) ...............................................................11

89 Fed. Reg. 27,842 (Apr. 18, 2024) .................................................................6

# GLOSSARY

| | |
|---|---|
| 2024 Rule | U.S. EPA, "Multi-Pollutant Emissions Standards for Model Years 2027 and Later Light-Duty and Medium-Duty Vehicles," 89 Fed. Reg. 27,842 (Apr. 18, 2024) |
| Act | Clean Air Act, 42 U.S.C. § 7401 *et seq.* |
| EPA | U.S. Environmental Protection Agency |
| EPA Br. | EPA's Answering Brief |
| Rule | U.S. EPA, "Revised 2023 and Later Model Year Light-Duty Vehicle Greenhouse Gas Emissions Standards," 86 Fed. Reg. 74,434 (Dec. 30, 2021) |
| State Intv. Suppl. Br. | Supplemental Brief of State Respondent-Intervenors |
| State-PIO Intv. Br. | Brief of State and Public Interest Respondent-Intervenors |

## INTRODUCTION AND SUMMARY OF ARGUMENT

Respondent-Intervenor Public Interest Organizations submit this supplemental brief in response to the Court's Order of July 29, 2024. ECF No. 2067052. Neither *Ohio v. EPA*, 98 F.4th 288 (D.C. Cir. 2024), nor *Loper Bright Enterprises v. Raimondo*, 144 S.Ct. 2244 (2024), should alter the Court's disposition of these petitions for review. This Court's *Ohio* decision applied well-established standing principles to the unique facts of that case and should not change the analysis of Petitioners' standing here. And the Supreme Court's *Loper Bright* decision either does not affect the resolution of the statutory interpretation issues here or, if anything, supports EPA's and Intervenors' position.

At the outset, *Loper Bright* does not excuse Petitioners' failure to exhaust their statutory authority arguments during the instant rulemaking, as the Clean Air Act requires. And even if the Court were to reach those statutory arguments, *Loper Bright* supports EPA's and Intervenors' reading of the Act. As EPA and Intervenors explained in their answering briefs, the best reading of the statute is that it authorizes EPA to set fleetwide-average standards that reflect the application of zero-emission technologies. And EPA's consistent, longstanding position on these questions—informed by its decades of specialized experience implementing the statute—warrants the Court's respect under *Loper Bright*.

## ARGUMENT

## I.  *Ohio* Should Not Change the Standing Analysis Here

This Court's decision in *Ohio* applied established, preexisting precedent to conclude—based on the facts of that case—that the petitioners there had not satisfied their burden to establish standing to press their statutory claims. 98 F.4th at 299-306.[1] In particular, the decision held that petitioners had not demonstrated a "substantial probability" that a favorable decision would redress their alleged economic injuries. *Id.* at 301. The Court explained that neither the record evidence, nor any other evidence identified by petitioners, provided a basis to conclude that automobile manufacturers would change course in the remaining model years if the Court were to vacate the challenged waiver reinstatement. *Id.* at 302-05.

Key to the *Ohio* decision were facts unique to that case that are distinct from the facts at issue here. For example, *Ohio* involved a Clean Air Act preemption waiver that EPA initially granted in 2013, which covered California standards for model years 2017-2025. *Id.* at 297. By the time petitioners challenged EPA's reinstatement of that waiver in 2022, automobile manufacturers—who themselves never challenged the waiver—had already spent years adjusting their fleets to comply with the California standards. *Id.* at 297-98. Moreover, the administrative

---

[1] The *Ohio* decision held that the state petitioners did have standing to raise their constitutional claim based on an alleged dignitary injury of unequal treatment. 98 F.4th at 307-08. No similar claim is present in this case.

record at that time addressed the overall effect of the California standards during the entire regulatory period, rather than the effect of the standards in only the remaining model years. *Id.* at 302-03. And other evidence before the Court, including an expert declaration submitted by California, showed that manufacturers were "already selling *more* qualifying vehicles in California than the State's standards require." *Id.* at 304-05.

Here, by contrast, EPA finalized the challenged standards in 2021, covering only future model years (2023-2026), and Petitioners challenged them within a matter of weeks. Manufacturers had thus not spent years adjusting their fleets to comply with the standards at issue, the administrative record addressed the standards' effect on the remaining model years at the time the petitions were filed, and no party filed a countering expert declaration contesting redressability.

Public-Interest Intervenors previously took no position on whether Petitioners in this case had established standing to bring their petitions for review, and we take no such position now. But because the Court's decision in *Ohio* did not make new law, and merely applied existing precedent to the particular facts of that case, it should not change the Court's analysis of Petitioners' standing here.

## II.   *Loper Bright*, If Applicable, Supports EPA's Position Here

The Supreme Court's decision in *Loper Bright*—unlike this Court's decision in *Ohio*—did change the law by overruling the prior deference framework under

*Chevron v. NRDC*, 467 U.S. 837 (1984). But other than negating EPA's single-sentence fallback argument that relied on such deference, *see* EPA Br. 82, *Loper Bright*—to the extent applicable in this case—supports EPA's position.

### A. *Loper Bright* Does Not Excuse Petitioners' Failure to Raise Their Statutory Authority Arguments at an Appropriate Time

Nothing in *Loper Bright* changes the fact that Petitioners' statutory authority arguments are not properly before the Court. Petitioners press two statutory arguments, claiming that EPA may not (1) set fleetwide-average standards, or (2) "mandate" electric vehicles by including zero-emission technologies in such standards. The Court should not reach either of those claims because—as EPA and Intervenors have explained, EPA Br. 34-39; State-PIO Intv. Br. 3-5—they are untimely under 42 U.S.C. § 7607(b)(1) and not exhausted under § 7607(d)(7)(B). *See Growth Energy v. EPA*, 5 F.4th 1, 21-22, 24 (D.C. Cir. 2021) (discussing limited nature of the reopening exception to the Clean Air Act's limitations period, and strict enforcement of the Act's exhaustion requirement to statutory interpretation questions).

*Loper Bright* did not alter these statutory requirements or otherwise excuse Petitioners' failure to raise their arguments at an appropriate time. For example, this Court has explained that it enforces the Clean Air Act's exhaustion requirement "'strictly'" to ensure that EPA has an opportunity to respond to legal challenges so that the Court will have the "benefit of the agency's expertise" when

resolving disputes, including those regarding statutory interpretation. *Motor &*
*Equip. Mfrs. Ass'n v. Nichols*, 142 F.3d 449, 462 (D.C. Cir. 1998) (quoting *NRDC*
*v. Thomas*, 805 F.2d 410, 427 (D.C. Cir. 1986)). Similarly, *Loper Bright*
reaffirmed that, although a reviewing court may no longer be bound by an
agency's interpretation of the statute, the court nonetheless should have the benefit
of the agency's expertise at its disposal when considering technical statutory
questions. 144 S.Ct. at 2267 (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140
(1944)). Further, the weight a reviewing court gives the agency's interpretation in a
particular case may turn, in part, on the "thoroughness evident in [the agency's]
consideration" of the question. *Id.* at 2259 (quoting *Skidmore*, 323 U.S. at 140).

But here, because no commenter raised Petitioners' statutory authority
arguments "with reasonable specificity during the period for public comment," 42
U.S.C. § 7607(d)(7)(B), EPA did not have a "chance to consider 'in substance, if
not in form, the same objection now raised' in court," *Ohio v. EPA*, 144 S.Ct.
2040, 2055 (2024) (quoting *Appalachian Power Co. v. EPA*, 135 F.3d 791, 818
(D.C. Cir. 1998)). Consequently, the Court's review lacks the benefit of a thorough
agency explanation of the statutory interpretation issues in the administrative
record—as it would have had if commenters had raised the arguments with
reasonable specificity. For example, in EPA's preamble to its 2024 Rule setting
multi-pollutant emission standards for light- and medium-duty vehicles beginning

in model year 2027, the agency responded—at length—to comments raising some of the same statutory arguments. *See* 89 Fed. Reg. 27,842, 27,891-902 (Apr. 18, 2024). That 2024 Rule has already been challenged in this Court, by many of the same Petitioners as here, with opening briefs due in just a couple weeks. *See* Order, ECF No. 2065237, *Kentucky v. EPA*, No. 24-1087 (D.C. Cir. July 17, 2024) (opening briefs due September 6). The Court should refrain from resolving the statutory interpretation issues in this case and, instead, as the Clean Air Act contemplates, wait to review them in a case where they are properly raised.[2]

In short, the Court can—and should—dispose of Petitioners' statutory authority arguments on threshold grounds, irrespective of *Loper Bright*.

### B. EPA's Interpretation Is the Best Reading of the Statute, and Should Be Upheld Under *Loper Bright*

If the Court were to reach the statutory authority issues in this case, *Loper Bright* supports EPA's and Intervenors' position. The best reading of the statute is that it authorizes EPA to set fleetwide-average standards that reflect application of

---

[2] As reflected at oral argument, Petitioners' failure to exhaust their arguments was particularly problematic here because they premise much of their case—including their invocation of the major questions doctrine—on their assumption that the Rule effectively mandates electric vehicles. But the administrative record did not directly address that assumption, as it would have if Petitioners had exhausted the argument during the comment period. *See* 89 Fed. Reg. at 27,896-97 (explaining, in response to comments, that EPA's 2024 Rule can be met "solely with vehicles containing internal combustion engines"). Further, *Loper Bright* confirms that the Court's review of that issue—which would fall under the arbitrary-and-capricious standard, 42 U.S.C. § 7607(d)(9)(A)—remains "deferential." 144 S.Ct. at 2261.

zero-emission technologies. State-PIO Intv. Br. 6-19. The Act directs "[t]he Administrator" to set standards that apply to "classes" (or groups) of vehicles—including vehicles "designed as complete systems" to "prevent" pollution—and, in doing so, to consider anticipated and existing emission-control technologies. 42 U.S.C. § 7521(a)(1)-(2). Setting fleetwide-average standards that account for zero-emission vehicles is a straightforward exercise of this delegated authority. *See* State Intv. Suppl. Br. 6-13. Further, EPA's interpretation of the relevant provisions warrants respect under *Loper Bright*, as it has been consistent for decades and is informed by the agency's specialized experience implementing the statute. 144 S.Ct. at 2259 (discussing *Skidmore*, 323 U.S. at 140).

**1.** The best reading of the Act is that it authorizes EPA to consider all available motor vehicle technologies, including zero-emission technologies, when setting vehicle emission standards under § 7521(a)(1)-(2). EPA Br. 40-46. That provision directs EPA to promulgate standards for classes of new "motor vehicles," 42 U.S.C. § 7521(a)(1), which the Act defines by its function—not its propulsion technology or fuel—as "any self-propelled vehicle designed for transporting persons or property on a street or highway," *id.* § 7550(2). Further, the Act makes clear that the standards shall apply to such vehicles whether they are "designed as complete systems," or "incorporate" additional "devices," to "prevent or control pollution." *Id.* § 7521(a)(1). This language clearly includes zero-

emission technologies, such as battery-electric or fuel-cell powertrains, which are "complete systems" that "prevent" tailpipe pollution. State-PIO Intv. Br. 7-8. It would make no sense for the provision to cover technology that reduces pollution 99 percent, but not technology that prevents pollution altogether, particularly given the Act's "primary goal" of "pollution prevention." 42 U.S.C. § 7401(c).[3]

Nor can § 7521(a)(1)'s required endangerment finding exclude zero-emission vehicles from the provision's reach. The best reading of the provision is that the emissions from a class or classes of vehicles, rather than from each vehicle within a class, must cause or contribute to dangerous air pollution. EPA Br. 76-77; State-PIO Intv. Br. 17-19. And Congress clearly authorized EPA to "exercise a degree of discretion" in deciding how to group vehicles in a particular class. *Loper Bright*, 144 S.Ct. at 2263; *see NRDC v. EPA*, 655 F.2d 318, 338 (D.C. Cir. 1981) (recognizing EPA's "regulatory discretion" in establishing a class under § 7521(a)). Especially where Congress itself grouped all light-duty vehicles into a class for certain standards, 42 U.S.C. § 7521(b)(1)(A)-(B), it was well within EPA's authority to use similar classifications in its 2009 greenhouse gas endangerment finding, upheld by this Court over a decade ago. *See Coal. for Resp.*

---

[3] Although Petitioners often frame their arguments as challenging "electrification," electrification occurs across a spectrum of technologies—e.g., power steering and various forms of hybrids, *see* EPA Br. 8—most of which Petitioners do not contest. And Congress did not exclude any of those technologies, including zero-emission technologies, from EPA's consideration under § 7521(a)(1)-(2). EPA Br. 41.

*Regul., Inc. v. EPA*, 684 F.3d 102, 116-26 (D.C. Cir. 2012), *cert. denied in relevant part*, 571 U.S. 951 (2013). Petitioners have identified no basis to revisit that classification now, much less any reason EPA should excise from the class the most effective emission-reduction technology available—zero-emission vehicles.

**2.** The best reading of the statute is also that it allows EPA to set fleetwide-average standards. As just discussed, because Congress was concerned with the collective emissions of millions of vehicles, *see Int'l Harvester Co. v. Ruckelshaus*, 478 F.2d 615, 622 (D.C. Cir. 1973), it tasked EPA with determining whether emissions from any "class or classes" of new vehicles cause or contribute to dangerous air pollution, 42 U.S.C. § 7521(a)(1). Congress likewise required standards be applicable to the emissions "from [such] class or classes." *Id.* The phrase "class or classes" clearly refers to groups of vehicles. Thus, by its plain terms, § 7521(a) authorizes EPA to set standards based on the emissions performance of a group of vehicles—e.g., all the passenger cars a manufacturer produces in a given model year. *See* EPA Br. 62-63.

Nor does it matter that the Act does not *require* EPA to set fleetwide-average standards. State-PIO Intv. Br. 12. *Loper Bright* recognized that the best reading of a statute "may well be that the agency is authorized to exercise a degree of discretion," such as by empowering an agency to "'fill up the details'" of the statutory scheme or to regulate with "flexibility." 144 S.Ct. at 2263 (quoting

*Wayman v. Southard*, 10 Wheat. 1, 43 (1825); *Michigan v. EPA*, 576 U.S. 743, 752 (2015)). The Supreme Court has already held that § 7521(a) is such a provision. *See Massachusetts v. EPA*, 549 U.S. 497, 532 (2007) (explaining that the language of § 7521(a) reflects an "intentional effort" by Congress to confer "regulatory flexibility" on EPA). Indeed, Congress gave EPA flexibility not only in filling up the details of the standards' form and content in § 7521(a), *see* State-PIO Intv. Br. 9-12, but also in creating "appropriate" compliance mechanisms under § 7525(a), *see id.* at 13-15, such that both the "manner of testing deemed appropriate" and "the content of the standards themselves is within the *discretion* of the agency." *Thomas*, 805 F.2d at 425 n.24; *see also* State Intv. Suppl. Br. 8-9.

**3.** As noted above, *Loper Bright* also reaffirmed that—in determining the best reading of a statute—a reviewing court should give "due respect" to the views of the administering agency, which can provide a "'body of experience and informed judgment'" about the meaning of the statute. 144 S.Ct. at 2267 (quoting *Skidmore*, 323 U.S. at 140). "'The weight of such a judgment'" depends, in part, on the "'consistency'" of the agency's interpretation over time. *Id.* at 2259 (quoting *Skidmore*, 323 U.S. at 140). "That is because 'the longstanding practice of the government … can inform [a court's] determination of what the law is.'" *Id.* at 2258 (quoting *NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014)).

Accordingly, the Court should afford EPA a "measure of respect" for its "longstanding, consistently maintained interpretation" of the relevant Clean Air Act provisions. *Alaska Dep't of Env't Conservation v. EPA*, 540 U.S. 461, 488 (2004). Indeed, EPA has used fleetwide averaging in its emission standards since the 1980s, and has consistently defended its authority to do so. *See, e.g.*, 54 Fed. Reg. 22,652, 22,665-66 (May 25, 1989); 62 Fed. Reg. 31,192, 31,222 (June 6, 1997). EPA has also incorporated zero-emission vehicles into its fleetwide-average standards for roughly a quarter-century. State-PIO Intv. Br. 4 (discussing 65 Fed. Reg. 6698 (Feb. 10, 2000)). And since 2010, fleetwide averaging and zero-emission technologies have appeared together in all of EPA's light-duty vehicle standards, across multiple presidential administrations. State-PIO Intv. Br. 4-5 (citing 75 Fed. Reg. 25,324 (May 7, 2010); 77 Fed. Reg. 62,624 (Oct. 15, 2012); 79 Fed. Reg. 23,414 (Apr. 28, 2014); 85 Fed. Reg. 24,174 (Apr. 30, 2020)).

Fleetwide-average standards that include zero-emission technologies are thus a "settled administrative practice." *Loper Bright*, 144 S.Ct. at 2260 (quoting *Davies Warehouse Co. v. Bowles*, 321 U.S. 144, 156 (1944)). And that an agency "has interpreted the statute consistently"—as EPA has done here—strongly suggests its "reading merits [the Court's] respect." *Orton Motor, Inc. v. HHS*, 884 F.3d 1205, 1214 (D.C. Cir. 2018) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008)).

Finally, as noted above, the weight due an agency's interpretation also turns, at least in part, on the "thoroughness evident in [the agency's] consideration." *Loper Bright*, 144 S.Ct. at 2259 (quoting *Skidmore*, 323 U.S. at 140). But here, no commenter raised Petitioners' statutory authority arguments before EPA during the instant rulemaking, as the Clean Air Act requires. 42 U.S.C. § 7607(d)(7)(B). As a result, the agency had no reason to *sua sponte* defend regulatory approaches that had appeared in earlier rules, without challenge, for more than a decade. To the extent, then, that the Court is unable to determine what weight to give EPA's interpretation on the existing record, that would be all the more reason to refrain from resolving Petitioners' unexhausted statutory authority arguments in this case, and to leave them instead for another case where they are properly raised.

## CONCLUSION

The Court should deny the petitions, if it does not dismiss them.


Dated:      August 19, 2024           Respectfully submitted,

                                      */s/ Ian Fein*
                                      _____
                                      IAN FEIN
SEAN H. DONAHUE                       Natural Resources Defense Council
Donahue, Goldberg & Herzog           111 Sutter Street, 21st Floor
1008 Pennsylvania Avenue SE          San Francisco, CA 94104
Washington, DC 20003                 (415) 875-6147
(202) 277-7085                       ifein@nrdc.org
sean@donahuegoldberg.com             *Counsel for Natural Resources Defense*
                                     *Council*

VICKIE L. PATTON
PETER ZALZAL
ALICE HENDERSON
ANDREW P. SU
Environmental Defense Fund
2060 Broadway, Ste. 300
Boulder, CO 80302
(303) 447-7214
vpatton@edf.org
pzalzal@edf.org
ahenderson@edf.org
asu@edf.org

*Counsel for Environmental Defense
Fund*

ANN BREWSTER WEEKS
Clean Air Task Force
114 State Street, 6th Floor
Boston, MA 02109
(617) 624-0234
aweeks@catf.us

*Counsel for American Lung
Association, Clean Air Council, Clean
Wisconsin, and National Parks
Conservation Association*

ROBERT MICHAELS
Environmental Law & Policy Center
35 East Wacker Drive, Suite 1600
Chicago, IL 60601
(312) 795-3713
rmichaels@elpc.org

*Counsel for Environmental Law &
Policy Center*

JOANNE SPALDING
ANDREA ISSOD
Sierra Club
2101 Webster Street, Suite 1300
Oakland, CA 94612
(415) 977-5725
joanne.spalding@sierraclub.org
andrea.issod@sierraclub.org

JOSH BERMAN
Sierra Club
50 F Street NW, 8th Floor
Washington, DC 20001
(202) 650-6062
josh.berman@sierraclub.org

VERA PARDEE
726 Euclid Avenue
Berkeley, CA 94708
(858) 717-1448
pardeelaw@gmail.com

*Counsel for Sierra Club*

EMILY K. GREEN
Conservation Law Foundation
53 Exchange Street, Suite 200
Portland, ME 04101
(207) 210-6439
egreen@clf.org

*Counsel for Conservation Law
Foundation*

SCOTT L. NELSON
Public Citizen Litigation Group
1600 20th Street, NW
Washington, DC 20009
(202) 588-1000
snelson@citizen.org

*Counsel for Public Citizen, Inc.*

JESSICA ANNE MORTON
SARAH GOETZ
Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jmorton@democracyforward.org
sgoetz@democracyforward.org

*Counsel for Union of Concerned Scientists*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limitation of this Court's Order of July 29, 2024. According to Microsoft Word, the portions of this document not excluded by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1) contain 2627 words.

This brief complies with the typeface requirements of Federal Rules of Appellate Procedure 32(a)(5) and 32(a)(6) because it was prepared using a proportionally spaced typeface (Times New Roman) in 14-point font.

Dated: August 19, 2024

*/s/ Ian Fein*

Ian Fein